1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 09, 2019

SEAN F. McAVOY, CLERK

4

5          **UNITED STATES DISTRICT COURT**

6          **EASTERN DISTRICT OF WASHINGTON**

7    KIMBERLEE L.,[1]                    |    No. 2:18-cv-00236-MKD
                    Plaintiff,          |
8                                        |    REPORT AND
          vs.                            |    RECOMMENDATION TO DENY
9                                        |    PLAINTIFF'S MOTION FOR
     COMMISSIONER OF SOCIAL              |    SUMMARY JUDGMENT AND TO
10   SECURITY,                           |    GRANT DEFENDANT'S MOTION
                    Defendant.           |    FOR SUMMARY JUDGMENT
11                                        |
                                         |    ECF Nos. 13, 14
12

13          Before the Court, on report and recommendation, are the parties' cross-

14   motions for summary judgment. ECF Nos. 13, 14. The undersigned, having

15   reviewed the administrative record and the parties' briefing, is fully informed. For

16

17   _____

18   [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19   identifies them only by their first names and the initial of their last names.

20

     REPORT AND RECOMMENDATION - 1

1  the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion, ECF No.

2  13, be denied and Defendant's Motion, ECF No. 14, be granted.

3                                        **JURISDICTION**

4       The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

5                                   **STANDARD OF REVIEW**

6       A district court's review of a final decision of the Commissioner of Social

7  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8  limited; the Commissioner's decision will be disturbed "only if it is not supported

9  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

10 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11 reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

12 (quotation and citation omitted).  Stated differently, substantial evidence equates to

13 "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

14 citation omitted).  In determining whether the standard has been satisfied, a

15 reviewing court must consider the entire record as a whole rather than searching

16 for supporting evidence in isolation.  *Id.*

17      In reviewing a denial of benefits, a district court may not substitute its

18 judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

19 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20 rational interpretation, [the court] must uphold the ALJ's findings if they are

REPORT AND RECOMMENDATION - 2

1   supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

2   F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

3   ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

4   "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

5   *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

6   decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

7   *Sanders*, 556 U.S. 396, 409-10 (2009).

8                    **FIVE-STEP EVALUATION PROCESS**

9        A claimant must satisfy two conditions to be considered "disabled" within

10  the meaning of the Social Security Act.  First, the claimant must be "unable to

11  engage in any substantial gainful activity by reason of any medically determinable

12  physical or mental impairment which can be expected to result in death or which

13  has lasted or can be expected to last for a continuous period of not less than twelve

14  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

15  "of such severity that he is not only unable to do [his or her] previous work[,] but

16  cannot, considering [his or her] age, education, and work experience, engage in

17  any other kind of substantial gainful work which exists in the national economy."

18  42 U.S.C. § 1382c(a)(3)(B).

19       The Commissioner has established a five-step sequential analysis to

20  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

REPORT AND RECOMMENDATION - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

REPORT AND RECOMMENDATION - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 28, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset beginning June 18, 2015. Tr. 197-205. The application was denied initially, Tr. 112-16, and on reconsideration, Tr. 120-23. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on May 4, 2017. Tr. 35-82. On July 17, 2017, the ALJ denied Plaintiff's claim. Tr. 12-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 28, 2015. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: posttraumatic stress disorder; major depressive disorder; and borderline personality disorder. Tr. 17.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

REPORT AND RECOMMENDATION - 6

impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform

a full range of work at all exertional levels but with the following nonexertional

limitations:

> [Plaintiff] can have only superficial contact with the general public,
> coworkers, and supervisors, with no collaborative tasks.

Tr. 19.

At step four, the ALJ found Plaintiff is unable to perform any past relevant

work.  Tr. 24.  At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, and testimony from the vocational expert, there

were jobs that existed in significant numbers in the national economy that Plaintiff

could perform, such as: laundry worker II, collator operator, and document

preparer.  Tr. 25.  Therefore, the ALJ concluded Plaintiff was not under a

disability, as defined in the Social Security Act, from September 28, 2015, the date

the application was filed, through the date of the decision.  Tr. 26.

On May 29, 2018, the Appeals Council denied review of the ALJ's decision,

Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes

of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

REPORT AND RECOMMENDATION - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her Title XVI supplemental security income benefits under the Social Security Act. Plaintiff raises the following issues for review:

　　1.　Whether the ALJ properly evaluated the medical opinion evidence; and

　　2.　Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 13 at 16.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Kayleen Islam-Zwart, Ph.D. and Nancy Winfrey, Ph.D., Leslie Postovoit, Ph.D., and Michael Regets, Ph.D. ECF No. 13 at 19-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

REPORT AND RECOMMENDATION - 8

to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

*1.  Dr. Islam-Zwart*

In September 2015, Dr. Islam-Zwart performed a State psychological evaluation, Tr. 337-45, and diagnosed Plaintiff with posttraumatic stress disorder, major depressive disorder (recurrent, severe without psychotic features), and borderline personality disorder.  Tr. 338.  Dr. Islam-Zwart opined severe limitations in Plaintiff's abilities to adapt to changes in a routine work setting,

1  communicate and perform effectively in a work setting, and complete a normal

2  work day and work week without interruptions from psychologically based

3  symptoms.  He opined marked limitations in Plaintiff's abilities to (i) understand,

4  remember, and persist in tasks following detailed instructions; (ii) perform

5  activities within a schedule, maintain regular attendance, and be punctual within

6  customary tolerances without special supervision; (iii) make simple work-related

7  decisions; (iv) ask simple questions or request assistance; (v) maintain appropriate

8  behavior in a work setting; and (vi) set realistic goals and plan independently.  Tr.

9  339.  Dr. Islam-Zwart opined moderate limitations in Plaintiff's abilities to (i)

10 understand, remember, and persist in tasks by following detailed instructions; (ii)

11 learn new tasks; (iii) perform routine tasks without special supervision; and (iv) be

12 aware of normal hazards and take appropriate precautions.  *Id*.  Dr. Islam-Zwart

13 opined that the overall severity of the combined impact of Plaintiff's diagnosed

14 mental impairments was marked.  *Id*.

15        The ALJ assigned little weight to Dr. Islam-Zwart's opinion.  Tr. 23.

16 Because Dr. Islam-Zwart's opinion was contradicted by the opinions of

17 nonexamining physicians Dr. Winfrey, Dr. Postovoit and Dr. Regets, Tr. 40-51,

18 152-54, 178-83, the ALJ was required to provide specific and legitimate reasons

19 for rejecting portions of Dr. Islam-Zwart's opinion.  *See Bayliss*, 427 F.3d at 1216.

20 In this regard, Plaintiff's sole contention in her opening brief is that "here, that was

REPORT AND RECOMMENDATION - 10

1    not done." ECF No. 13 at 19-20. Even in the Reply, Plaintiff does not address the

2    basis for the ALJ's rejection of Dr. Islam-Zwarts' opinion. ECF No. 15 at 9-11. It

3    is insufficient for Plaintiff to mention this possible argument, but fail to address or

4    challenge this aspect of the ALJ's decision. *See Indep. Towers of Wash. v.*

5    *Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be

6    accompanied by reasons."); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.

7    1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some

8    effort at developed argumentation, are deemed waived. It is not sufficient for a

9    party to mention a possible argument in a most skeletal way, leaving the court

10   to . . . put flesh on its bones."). Therefore, any challenges are waived, and the

11   undersigned may decline to review them. *See Carmickle v. Comm'r, Soc. Sec.*

12   *Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining court may decline to

13   address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d

14   996, 1000 (9th Cir. 1998) (the court may not consider on appeal issues not

15   "specifically and distinctly argued" in the party's opening brief).

16        Despite Plaintiff's waiver, the undersigned finds the ALJ's rejection of Dr.

17   Islam-Zwarts' opinion is supported by specific and legitimate reasons supported by

18   substantial evidence in the record. The ALJ rejected Dr. Islam-Zwart's opinion

19   that Plaintiff could not work because he examined Plaintiff "shortly after she was

20   released from the hospital for suicidal ideation and her condition was just

REPORT AND RECOMMENDATION - 11

1  beginning to improve with medications." Tr. 23. The ALJ found that Dr. Islam-

2  Zwart's opinion did not reflect Plaintiff's longitudinal functioning. Tr. 23. An

3  ALJ may reject limitations "unsupported by the record as a whole." *Batson v.*

4  *Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). The

5  specific and legitimate reason standard can be met by "setting out a detailed and

6  thorough summary of the facts and conflicting clinical evidence, [the ALJ] stating

7  his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715,

8  725 (9th Cir. 1998). Here, Plaintiff was discharged from the hospital on

9  September 3, 2015, after a 9-day hospitalization for suicidal ideation following a

10  "partial" suicide attempt, Tr. 302, and as noted by the ALJ, she was "dysfunctional

11  at that time, but the treatment notes show she improved significantly over the

12  course of the record, and certainly was improved in less than 12 months after her

13  hospitalization." Tr. 22; *see* Tr. 350 (Nov. 10, 2015: progress note indicating

14  Plaintiff was stable, with good activities of daily living, and medication compliant

15  with no suicidal ideation); Tr. 432 (Mar. 17, 2016: Plaintiff reports feeling stable

16  and should continue current medication); Tr. 486 (Nov. 23, 2015: same); Tr. 434

17  (Mar. 4, 2016: provider's impression indicating Plaintiff presented as "stable and

18  in a very positive mood as she was getting married."); Tr. 489 (Sept. 26, 2016:

19  treating note indicating Plaintiff was scheduled to begin Division of Vocational

20  Rehabilitation (DVR) class as her "test scores said that she is eligible for work.");

1  Tr. 778 (Sept. 19, 2016: treating provider progress note stating "doing much better

2  talking about her past . . ."); Tr. 781 (Sept. 20, 2016: treating provider progress

3  note indicating "[a]ppears to have mild mental impairment").  The timing of Dr.

4  Islam-Zwarts' functional assessment and its conflict with Plaintiff's subsequent

5  treatment notes was a specific and legitimate reason supported by substantial

6  evidence for rejecting her opinion.

7      *2. Dr. Winfrey*

8      Dr. Winfrey, a psychologist, testified at the administrative hearing.  Tr. 40-

9  51.  Dr. Winfrey opined Plaintiff did not meet or equal a Listing and that

10  functionally, Plaintiff could work with superficial interactions with other people

11  requiring no teamwork.  Tr. 41-45.  The ALJ gave this opinion great weight.  Tr.

12  22-23.

13      An ALJ may credit the opinion of nonexamining expert who testifies at

14  hearing and is subject to cross-examination.  *See Andrews v. Shalala*, 53 F.3d

15  1035, 1042 (9th Cir. 1995) (citing *Torres v. Sec'y of H.H.S.,* 870 F.2d 742, 744 (1st

16  Cir. 1989)).  The opinion of a nonexamining physician may serve as substantial

17  evidence if it is supported by other evidence in the record and are consistent with

18  it.  *Andrews*, 53 F.3d at 1041.  Other cases have upheld the rejection of an

19  examining or treating physician based in part on the testimony of a non-examining

20  medical advisor when other reasons to reject the opinions of examining and

1    treating physicians exist independent of the non-examining doctor's opinion.

2    *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.

3    1989) (reliance on laboratory test results, contrary reports from examining

4    physicians and testimony from claimant that conflicted with treating physician's

5    opinion); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of

6    examining psychologist's functional assessment which conflicted with his own

7    written report and test results).  Thus, case law requires not only an opinion from

8    the consulting physician but also substantial evidence (more than a mere scintilla

9    but less than a preponderance), independent of that opinion which supports the

10   rejection of contrary conclusions by examining or treating physicians.  *Andrews*,

11   53 F.3d at 1039.

12         The ALJ listed several reasons for according more weight to Dr. Winfrey's

13   opinion over the opinion of Dr. Zwart.  First, the ALJ noted that Dr. Winfrey's

14   medical expertise as a psychologist and familiarity with the Social Security

15   regulations.  In deciding how much weight to give to a medical opinion, the ALJ

16   may consider the expertise of the source, including the "amount of understanding"

17   of the "disability programs and their evidentiary requirements."  20 C.F.R. §

18   416.927(c)(6).

19         Second, the ALJ found that Dr. Winfrey had the opportunity to review the

20   entire record.  The extent to which a medical source is "familiar with the other

REPORT AND RECOMMENDATION - 14

1  information in [the claimant's] case record" is relevant in assessing the weight of

2  that source's medical opinion.  *See* 20 C.F.R. § 416.927(c)(6).  In reply, Plaintiff

3  raises the contention that that Dr. Winfrey's opinion was marred by her lack of

4  knowledge of the record.  ECF No. 15 at 10 ("It is evident that [Dr. Winfrey] did

5  not read all the records in the case and was not familiar with all of Ms. Lopez's

6  objective psychological symptoms and diagnoses.").  Plaintiff points to the fact Dr.

7  Winfrey asked Plaintiff's counsel to point her to the record diagnosing Plaintiff

8  with pseudoseizures and also that Dr. Winfrey testified she did not believe Plaintiff

9  suffered from anxiety separate from PTSD.  ECF No. 15 at 10 (citing Tr. 46-49).

10  However, Dr. Winfrey expressly testified that she had reviewed all of the medical

11  evidence, Tr. 40-41, and she specifically testified that she had reviewed the

12  exhibits Plaintiff's counsel questioned her about at the hearing.  Tr. 45, 50.  Absent

13  a review of the record, Dr. Winfrey would not have been able to provide the detail

14  offered in her testimony.  Plaintiff's sweeping claim regarding Dr. Winfrey's lack

15  of familiarity is unsupported by the record.

16       Third, the ALJ found Dr. Winfrey provided a "reasonable explanation."  Tr.

17  23.  More weight is given to "opinions that are explained than to those that are

18  not."  *Holohan,* 246 F.3d at 1202; *see also* 20 C.F.R. § 416.927(c)(3) ("The better

19  an explanation a source provides for an opinion, the more weight we will give that

20  opinion.").

REPORT AND RECOMMENDATION - 15

1    Finally, the ALJ concluded Dr. Winfrey's opinion was consistent with "the

2    longitudinal medical history and objective medical findings." Tr. 23.  The

3    importance of evaluating a longitudinal picture is especially heightened when the

4    Plaintiff's condition involves mental health impairments which can often not be

5    accurately accounted for in a single visit encounter.  The ALJ concluded that

6    following Plaintiff's psychiatric hospitalization in late August 2015, records show

7    a positive response to medication and therapy and situational stressors (including

8    abusive living situations) or lack of medication compliance often contributing to

9    fluctuations in her symptoms.  Tr. 21-22; *see, e.g.*, Tr. 350 (Nov. 10, 2015:

10    progress note indicating Plaintiff was stable, with good activities of daily living,

11    and medication compliant with no suicidal ideation); Tr. 432 (Mar. 17, 2016:

12    Plaintiff reports feeling stable and continues current medication); Tr. 486 (Nov. 23,

13    2015: same); Tr. 434 (Mar. 4, 2016: provider's impression indicating Plaintiff

14    presented as "stable and in a very positive mood as she was getting married."); Tr.

15    489 (Sept. 26, 2016: treating note indicating Plaintiff was scheduled to begin DVR

16    class as her "test scores said that she is eligible for work."); Tr. 357 (Sept. 11,

17    2015: progress note suggesting changing living situation will "greatly alleviate"

18    symptoms); Tr. 362 (Sept. 22, 2015: noting distress triggered by living situation,

19    break up of relationship, and loss of job); Tr. 426 (Mar. 22, 2016: progress note

20    describing Plaintiff's relief after moving and living on her own); Tr. 486 (Nov. 23,

REPORT AND RECOMMENDATION - 16

2015: progress note indicating Plaintiff presented as "stable, with good [activities of daily living]" and medication compliant, with no recent suicidal ideation); Tr. 550 (Apr. 26, 2016: progress note indicating Plaintiff had stopped medications a month prior because she didn't think they were working, and she felt depressed and anxious); Tr. 566 (Feb. 2017: progress note stating Plaintiff reported taking her medications and denying thoughts of suicide); Tr. 585 (Nov. 28, 2016: progress note stating Plaintiff took a week off her medications); Tr. 778 (Sept. 19, 2016: treating provider progress note stating "doing much better talking about her past . . ."); Tr. 781 (Sept. 20, 2016: treating provider's progress note indicating "[a]ppears to have mild mental impairment").  The ALJ further noted Plaintiff's mental status exams have generally been normal or "only minimally abnormal." Tr. 21 (citing Tr. 346-424, 487-561, 562-610).  Although Plaintiff admitted to occasional suicidal ideations, Tr. 598, 577, and reported a history of self-injurious behavior, including cutting to relieve tension, Tr. 524, 577, there is no indication of any recurrence of the episode that led to her hospitalization in August 2015 and as noted by the ALJ, examinations also revealed stable mental status with no suicidal ideations.  Tr. 21 (citing Tr. 576-77 (Jan. 18, 2017: noting presence of suicidal ideation), Tr. 566 (Feb. 2, 2017: noting Plaintiff denied thoughts of suicide).

Plaintiff contends Dr. Winfrey's opinion is "obviously contrary" to the counseling records, the "findings made at Sacred Heart Medic[a]l Center and

REPORT AND RECOMMENDATION - 17

Kootenai Medical Center," and Dr. Zwart, and alone, the opinion of a non-examining, reviewing doctor, cannot constitute substantial evidence. ECF No. 13 at 14, 19-20; ECF No. 15 at 9-11. Plaintiff presents an alternative view of the evidence. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ's interpretation of the evidence was rational and substantial evidence supports the ALJ's decision to accord greater weight to Dr. Winfrey's opinion.

### 3. Dr. Postovoit and Dr. Regets

Plaintiff briefly mentions the fact the ALJ accorded some weight to the opinions of non-examining state agency reviewing psychologists Dr. Postovoit and Dr. Regets, Tr. 84-95, 97-108. ECF No. 13 at 19-20; ECF No. 15 at 10-11. Plaintiff does not raise any separate contentions regarding the ALJ's analysis of these opinions, but notes that these opinions cannot alone constitute substantial evidence. *Id*. In light of the ALJ's proper analysis of the opinions of Dr. Islam-

1  Zwart and Dr. Winfrey, and reasonable interpretation of the record as a whole, the

2  undersigned need not address these opinions further.

3    **B. Plaintiff's Symptoms Claims**

4        Plaintiff faults the ALJ for failing to rely on reasons that were clear and

5  convincing in discrediting her subjective symptom claims.  ECF No. 13 at 16-18.

6  An ALJ engages in a two-step analysis to determine whether to discount a

7  claimant's testimony regarding subjective symptoms.  Social Security Ruling

8  (SSR) 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether

9  there is objective medical evidence of an underlying impairment which could

10  reasonably be expected to produce the pain or other symptoms alleged."  *Molina*,

11  674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show

12  that her impairment could reasonably be expected to cause the severity of the

13  symptom she has alleged; she need only show that it could reasonably have caused

14  some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.

15  2009).

16        Second, "[i]f the claimant meets the first test and there is no evidence of

17  malingering, the ALJ can only reject the claimant's testimony about the severity of

18  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

19  rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

20  omitted).  General findings are insufficient; rather, the ALJ must identify what

REPORT AND RECOMMENDATION - 19

1    symptom claims are being discounted and what evidence undermines these claims.

2    *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

3    Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

4    symptom claims). "The clear and convincing [evidence] standard is the most

5    demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

6    1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

7    924 (9th Cir. 2002)).

8          Factors to be considered in evaluating the intensity, persistence, and limiting

9    effects of an individual's symptoms include: 1) daily activities; 2) the location,

10   duration, frequency, and intensity of pain or other symptoms; 3) factors that

11   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

12   side effects of any medication an individual takes or has taken to alleviate pain or

13   other symptoms; 5) treatment, other than medication, an individual receives or has

14   received for relief of pain or other symptoms; 6) any measures other than treatment

15   an individual uses or has used to relieve pain or other symptoms; and 7) any other

16   factors concerning an individual's functional limitations and restrictions due to

17   pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

18   416.929(c)(1)-(3) (2011). The ALJ is instructed to "consider all of the evidence in

19   an individual's record," "to determine how symptoms limit ability to perform

20   work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

REPORT AND RECOMMENDATION - 20

1    The ALJ found that Plaintiff's medically determinable impairments could

2    reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

3    statements concerning the intensity, persistence, and limiting effects of her

4    symptoms were not entirely consistent with the evidence.  Tr. 20.

5    *1.  Lack of Supporting Medical Evidence*

6    The ALJ found the severity of symptoms reported by Plaintiff were not

7    supported by the medical evidence.  Tr. 20-22.  An ALJ may not discredit a

8    claimant's symptom testimony and deny benefits solely because the degree of the

9    symptoms alleged is not supported by objective medical evidence.  *Rollins*, 261

10   F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v.*

11   *Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680

12   (9th Cir. 2005).  However, the medical evidence is a relevant factor in determining

13   the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857;

14   20 C.F.R. § 416.929(c)(2).

15   Here, the ALJ considered Plaintiff's symptom complaints, including her

16   allegation she did not believe she could work due to lack of energy, poor

17   concentration, difficulty reading instructions, suicidal ideations, irritability,

18   tearfulness, anxiety, fear and inability to persist.  Tr. 20; *see* Tr. 229.  The ALJ

19   reasonably considered the medical evidence and concluded it did not support the

20   alleged severity of Plaintiff's symptoms.  For example, there were numerous

REPORT AND RECOMMENDATION - 21

1  examinations which generally evidenced a normal or "minimally abnormal"

2  findings.  Tr. 21 (citing Tr. 346-424, 487-561, 562-610); *see, e.g.*, Tr. 356-57 (Oct.

3  2015); Tr. 364-65 (Sept. 2015); Tr. 440-41 (Feb. 2016); Tr. 459-60 (Jan. 2016); Tr.

4  479-80 (Dec. 2015); Tr. 499-500 (Aug. 2016); Tr. 527-27 (June 2016); Tr. 552-53

5  (Apr. 2016); Tr. 570-71 (Jan. 2017); Tr. 592-93 (Nov. 2016); Tr. 606-07 (Oct.

6  2016).  Subsequent to Plaintiff's psychiatric hospitalization in August 2015, the

7  ALJ noted the medical record showed significant improvement.  Tr. 22; *see* Tr.

8  350 (Nov. 10, 2015: progress note indicating Plaintiff was stable, with good

9  activities of daily living, and medication compliant with no suicidal ideation); Tr.

10  432 (Mar. 17, 2016: Plaintiff reports feeling stable and should continue current

11  medication); Tr. 486 (Nov. 23, 2015: same); Tr. 434 (Mar. 4, 2016: provider's

12  impression indicating Plaintiff presented as "stable and in a very positive mood as

13  she was getting married."); Tr. 489 (Sept. 26, 2016: treating note indicating

14  Plaintiff was scheduled to begin DVR class as her "test scores said that she is

15  eligible for work.").  Plaintiff's treating providers described Plaintiff's impairment

16  as "mild."  Tr. 21; s*ee* Tr. 769 (Mar. 24, 2016: "[a]ppears to have a mild mental

17  disability.  Answers appropriately but appears and talk[sic] immature."); Tr. 781

18  (Sept. 20, 2016: noting Plaintiff was nervous and "[a]ppears to have mild mental

19  impairment").

20

REPORT AND RECOMMENDATION - 22

1    Here, the ALJ's interpretation is reasonable and accordingly, should not be

2    disturbed.  The contradictory medical evidence provides a specific, clear, and

3    convincing reason for discounting Plaintiff's characterization of her symptoms.

4        *2. Failure to Follow Treatment Recommendations*

5        The ALJ found Plaintiff's symptoms complaints were inconsistent with

6    Plaintiff's periodic failure to follow prescribed treatment recommendations.  Tr.

7    21.  Noncompliance with medical care or unexplained or inadequately explained

8    reasons for failing to seek medical treatment cast doubt on a claimant's subjective

9    complaints.  *Fair*, 885 F.2d at 603; *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir.

10   1996).  The ALJ noted that Plaintiff periodically stopped taking her medications or

11   did not refill her prescribed medications, and during these periods she experienced

12   symptoms of depression and anxiety.  Tr. 21 (citing Tr. 550 (Apr. 2016: progress

13   note summarizing assessment completed in July 2015, Tr. 389, stating Plaintiff

14   stopped her medications approximately one month prior because she didn't think

15   they were working, then she lost her job and she felt quite depressed and anxious);

16   Tr. 585 (Nov. 2016: stating Plaintiff presents with depressed mood, tearful affect,

17   and is anxious throughout the session and reports she "took a week off from her

18   meds at her husband['s pressuring")); *see* Tr. 349 (Nov. 2015: stating Plaintiff

19   was shaking and had stated she hadn't taken her medication in three days because

20   she needed refills); Tr. 484 (Dec. 2015: stating Plaintiff was out of medications);

1  Tr. 793 (Nov. 2016: hospital note stating dizziness may be due to withdrawal from

2  medications since she hadn't taken them in four days and prescribing one week

3  refill).  The ALJ concluded Plaintiff's non-compliance "suggests her symptoms

4  were not especially troublesome."  Tr. 21.  Plaintiff does not challenge this finding,

5  ECF No. 13 at 16-18, thus, any challenge is waived.  *See Carmickle*, 533 F.3d at

6  1161 n.2 (9th Cir. 2008).  Regardless of Plaintiff's waiver, Plaintiff's repeated non-

7  compliance with her psychiatric medication regimen provides another specific,

8  clear and convincing reason for discounting Plaintiff's characterization of the

9  severity of her symptoms.

10         *3.  Improvement with Treatment and Situational Stressors*

11         The ALJ further found that while the evidence showed that Plaintiff's mental

12  health symptoms were relieved with treatment, including counseling and

13  medication, they were exacerbated by situational stressors, including abusive

14  relationships.  Tr. 21.  The ALJ commented that the "main problem" Plaintiff

15  reported in her treatment notes was "family problems, which would not necessarily

16  carry into the work environment."  Tr. 22.  The effectiveness of treatment is a

17  relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §

18  416.929(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th

19  Cir. 2006) (determining that conditions effectively controlled with medication are

20  not disabling for purposes of determining eligibility for benefits).  Moreover, if a

1  claimant suffers from limitations that are transient and result from situational

2  stressors, as opposed to resulting from a medical impairment, an ALJ may properly

3  consider this fact in discounting Plaintiff's symptom claims.  *See Chesler v.*

4  *Colvin*, 649 F. App'x. 631, 632 (9th Cir. 2016) (symptom testimony properly

5  rejected in part because "the record support[ed] the ALJ's conclusion that

6  [plaintiff's] mental health symptoms were situational"); *Wright v. Colvin*, No. 13-

7  CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash. July 25, 2014) (ALJ

8  properly considered situational stressors where the finding was "squarely

9  supported" by the medical evidence and Plaintiff's own testimony that she would

10 likely be able to maintain full-time employment "but for the 'overwhelming' stress

11 caused by caring for her family members."); *but see Bryant v. Astrue*, No. C12-

12 5040-RSM-JPD, 2012 WL 5293018, at *7 (W.D. Wash. Sept. 24, 2012)

13 ("Although the Court agrees with the ALJ that the record reflects some

14 exacerbation of plaintiff's mental health symptoms in response to stress, the Court

15 cannot agree with the ALJ's finding that these situational stressors are isolated and

16 sporadic events that have exacerbated plaintiff's mental health symptoms only

17 temporarily. On the contrary, the record suggests a continuum of situational

18 stressors in plaintiff's life which affect her ability to cope in a way that allows her

19 to work on a regular and continuing basis. Plaintiff's argument that chronic

20 situational stressors are typical for her dependent personality disorder, and do not

REPORT AND RECOMMENDATION - 25

indicate a lack of credibility on her part, is therefore well-taken."). However, "because mental health conditions may presumably *cause* strained personal relations or other life stressors," the fact they occur simultaneously should not be the sole basis for concluding a claimant's limitations result from situational stressors. *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-742-SI, 2018 WL 3090200, at *7 (D. Or. June 20, 2018) (emphasis in original) (updates on what was going on in the plaintiff's life contained in treatment notes did not necessarily suggest plaintiff's symptoms were caused by those stressors, or that the plaintiff would not have had symptoms in the absence of those issues).

Here, Plaintiff described depression and stress due to living with her father, Tr. 350, 352, 354, 365, 381, but reported doing "much better" after she married and moved. Tr. 21 (citing Tr. 426-28 (Mar. 2016: progress notes describing Plaintiff's relief after moving and living on her own)); *see* Tr. 367 ("moving away from abusive father will also greatly alleviate [client's symptoms]"). In January 2017, Plaintiff reported suicidal ideation during a time she also experienced a threat to her safety, however, the next month, Plaintiff's progress note revealed her home life was calmer, she denied suicidal ideation, and she discussed wanting to find a way to reach her goals of becoming a teacher and making a contribution to her household. Tr. 564. Plaintiff does not cite record evidence disputing the evidence described by the ALJ showing her symptoms were exacerbated during

1    periods of situational stress, and improved when stressors receded.  However, in

2    reply, Plaintiff claims that "everything is stressful for her," suggesting she is stress

3    intolerant in "all situations."  ECF No. 15 at 8.  The record does not clearly support

4    any insinuation that Plaintiff's mental health symptoms are transient or could be

5    completely alleviated in the absence of situational stressors.  However, it is the

6    ALJ's role to resolve conflicts in the evidence, and the ALJ's finding that many of

7    Plaintiff's most symptomatic periods were due to situational stressors (often

8    concerning relationships with others) is a reasonable interpretation of the record,

9    and thus a reason to discount the alleged severity of her symptoms.  *See Menchaca*

10   *v. Comm'r*, No. 6:15-cv-01470-HZ, 2016 WL 8677320, at *7 (D. Or. Oct. 7, 2016)

11   (ALJ's conclusion that the claimant's symptoms were sometimes caused by

12   situational stressors was reasonable interpretation of the record, and thus a

13   legitimate reason to discount her credibility, but insufficiently clear and convincing

14   to uphold the ALJ's overall finding in light of other errors).  In addition, the ALJ's

15   RFC addressed Plaintiff's limitations posed by interpersonal relationships by

16   including only superficial contact with the general public, coworkers, and

17   supervisors, with no collaborative tasks.  Tr. 19.

18        *4.  Activities of Daily Living*

19        The ALJ discounted Plaintiff's symptom complaints because they were

20   inconsistent with the level of daily activity performed by Plaintiff.  An ALJ may

REPORT AND RECOMMENDATION - 27

consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261

F.3d at 857.  If a claimant can spend a substantial part of the day engaged in

pursuits involving the performance of exertional or non-exertional functions, the

ALJ may find these activities inconsistent with the reported disabling symptoms.

*Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not

vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a

claimant's symptom claims when the claimant reports participation in everyday

activities indicating capacities that are transferable to a work setting" or when

activities "contradict claims of a totally debilitating impairment."  *Molina*, 674

F.3d at 1112-13.  Here, the ALJ noted Plaintiff reported shopping at Costco,

working out at the gym[2], getting married, going to church twice a week, doing

household chores, grocery shopping, and taking the bus to the gym and

appointments.  Tr. 22 (citing Tr. 305, 343, 510, 519, 564).  The ALJ also indicated

---

[2] Plaintiff's contention in reply that Plaintiff "only went to the gym for four days,"

ECF No. 15 at 9, is unsupported by the record.  *See e.g.*, Tr. 42 (stating she goes

several days a week); Tr. 343 (stating she spends her time going to the gym

exercising two to three hours a day); Tr. 489 (stating she signed up for a "move it

to lose it" challenge at her gym); Tr. 509, 510 564, 573, 602 (stating she went to

hospital because she "over did" it in a "boot camp" class), 691.

REPORT AND RECOMMENDATION - 28

that Plaintiff's function report showed that Plaintiff: "went to the gym, went to the

mall, read books, cared for her cat, made simple meals, did dishes, drove, rode a

bike, shopped, did photography, wrote poems, and attended church twice a week."

Tr. 22 (citing Tr. 229-36).  Plaintiff also earned an associates degree and

repeatedly expressed interest in returning to college.  Tr. 22.  When the ALJ asked

why she would not be able to go back to school fulltime, she responded that lack of

funding was the main barrier, not her medical impairments.  Tr. 22; *see* Tr. 62.

Finally, as discussed below, for several months, Plaintiff worked three hours a day,

five days a week at Goodwill Industries as part of a DVR work assessment.  Tr. 22.

These activities contradicted Plaintiff's claim that she could not work due to poor

concentration, difficulty retaining instructions, anxiety making her fearful and

"give up," and depression causing her to be tired, suicidal and irritable.  Tr. 229,

20.  On this record, the ALJ reasonably found that Plaintiff's mental health

symptoms were inconsistent with her daily activities.  This was a clear and

convincing reason to discount Plaintiff's symptom complaints.

    5. *Work History*

        Finally, the ALJ took note of Plaintiff's successful completion of her work

assessment at Goodwill Industries during the period under review and Plaintiff's

lack of work history prior to her application date.  Tr. 22.  Plaintiff's own

perception of her ability to work is a proper consideration in determining

1  credibility.  *See* No. 2:16-cv-00402-MKD, *Barnes v. Comm'r of Soc. Sec.*, 2018

2  WL 545722 (E.D. Wash. Jan. 24, 2018) ("Evidence of Plaintiff's preparedness to

3  return to work, even if an optimistic self-assessment, is significant to the extent

4  that the Plaintiff is willing and able to work, as that belief indicates her allegation

5  of symptoms precluding work are not credible.").  Moreover, evidence of a poor

6  work history that suggests a claimant is not motivated to work is a permissible

7  reason to discredit a claimant's testimony that she is unable to work. *Thomas*, 278

8  F.3d at 959; SSR 96–7 (factors to consider in evaluating credibility include "prior

9  work record and efforts to work"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.

10  1996); 20 C.F.R. § 416.929.

11        Here, the ALJ noted that Plaintiff's "has repeatedly shown that she believes

12  herself capable of working."  Tr. 22 (citing Tr. 511, 543, 560, 574).  From

13  November 2016 to January 2017, Plaintiff worked at Goodwill Industries for three

14  hours a day, five days a week, completing the DVR work assessment.  Tr. 58, 573,

15  588.  Moreover, Plaintiff's work history indicates sparse earnings for the years

16  prior to alleged disability onset.  Tr. 213.  The ALJ concluded this suggests her

17  continued unemployed is "likely something of longer standing than her current

18  medical impairments."  Tr. 22.  While the sparse work history is factually accurate,

19  Plaintiff was only 24-years old at the time of the hearing, it took her approximately

20  four years to obtain her associates degree in 2014, Tr. 62, and she has reported

suffering from depression since childhood due to her abuse.  Tr. 341, 352.

Considered singly neither Plaintiff's desire or belief in her ability to work, or her

sparse work history, would constitute a clear and convincing basis to discount

Plaintiff's symptom claims.  Nonetheless, it was not error for the ALJ to consider

these facts and the ALJ provided other legally sufficient reasons.

In summary, the ALJ provided clear and convincing reasons to discredit

Plaintiff's symptom testimony.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the undersigned

concludes the ALJ's decision is supported by substantial evidence and free of

harmful legal error.  Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, be **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, be

**GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings,

recommendations or report within **fourteen (14)** days following service with a

copy thereof.  Such party shall file written objections with the Clerk of the Court

and serve objections on all parties, specifically identifying the portions to which

REPORT AND RECOMMENDATION - 31

objection is being made, and the basis therefor.  Any response to the objection

shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of

service.

A district judge will make a *de novo* determination of those portions to

which objection is made and may accept, reject or modify the magistrate judge's

determination.  The judge need not conduct a new hearing or hear arguments and

may consider the magistrate judge's record and make a determination thereon.  The

judge may, but is not required to, accept or consider additional evidence, or may

recommit the matter to the magistrate judge with instructions.  *United States v.*

*Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed.

R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of

appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and

Recommendation, forward a copy to counsel, and **SET A CASE**

**MANAGEMENT DEADLINE ACCORDINGLY.**

DATED May 9, 2019.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 32